UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MATTHEW DERBES                                          CIVIL ACTION

VERSUS                                                  NO. 24-488-JWD-RLB

STATE OF LOUISIANA

## ORDER

Before the Court is Plaintiff's Motion to Compel Depositions and Extend Discovery Deadline for Limited Purpose. (R. Doc. 24). The motion is opposed. (R. Doc. 34). Plaintiff filed a Reply. (R. Doc. 39).

## I.    Background

On or about November 5, 2021, Matthew Derbes ("Plaintiff" or "Derbes") initiated this employment discrimination action in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, naming as defendant his former employer, the State of Louisiana, through Louisiana Attorney General Jeff Landry ("Landry"), Department of Justice ("DOJ") (hereinafter, the "State" or "Defendant"). (R. Doc. 1-4 at 1-7). In Plaintiff's Second Supplemental, Amended, and Restated Petition, Plaintiff seeks recovery under Title VII, 42 U.S.C. § 2000e, reprisal under La. R.S. 23:967, and for defamation. (*See* R. Doc. 20).

Plaintiff alleges that in October 2006, he was hired as an Assistant Attorney General and then rose to the position of Deputy Director of the Criminal Division of the DOJ in 2018. (R. Doc. 20 at 1). Plaintiff alleges that he suffered reprisal/retaliation by Defendant for reporting and opposing violations of law, resulting in his demotion, threats, false public allegations, and ultimately his constructive discharge (through a tendered resignation in which he documented the allegations in the Complaint) on April 19, 2021. (R. Doc. 20 at 9). In particular, Plaintiff alleges

that in August 2020, he opposed the unlawful favorable treatment of a criminal defendant named "Campo" in a child pornography prosecution because of his personal connection to Landry (the "Campo Case"). (R Doc. 20 at 2-3). Plaintiff also alleges that during the same time frame, he opposed the expenditure of funds dedicated by law for the use in the prosecution of insurance fraud for other purposes (the alleged "Insurance Fraud Funding"). (R. Doc. 20 at 3).

In addition, Plaintiff alleges that he reported and opposed sexual harassment by DOJ's Director of the Criminal Division, Pat Magee ("Magee"), who Defendant tried to protect by suing a member of the media and shielding the production of public records related to Plaintiff's protective activity, including his written complaint of sexual harassment. (R. Doc. 20 at 3-5).[1] Plaintiff also alleges that DOJ's Human Resources Director, Deputy Director Sandra Schober ("Schober"), caused to be published a false document, dated April 7, 2021, accusing Plaintiff of filing false complaints of sexual harassment and identifying him to the media by his official job title (the "April 7, 2021 memorandum"). (R. Doc. 20 at 4-8).

Plaintiff alleges that after he provided his "constructive discharge notification" on April 19, 2021 (the "resignation letter"), Defendant, through Landry, "immediately called a 'press conference', denied [Plaintiff] medical leave, and terminated [Plaintiff's] employment and benefits effective April 19, 2021, which [Plaintiff] contends also constituted unlawful retaliation/reprisal." (R. Doc. 20 at 9).[2] Plaintiff alleges that at the April 20, 2021 Press Conference, Defendant (through Landry) made defamatory statements with malice and/or reckless disregard for the truth, including falsely accusing Plaintiff of lying, shirking his duties,

---

[1] The record includes a copy of Plaintiff's November 20, 2020 written complaint sent to Deputy Director Sandra Schober. (R. Doc. 34-12).

[2] In the resignation letter, Plaintiff set his resignation to be effective on May 10, 2021, stating that he would be taking sick leave in the interim in light of the alleged retaliatory harassment. (*See* R. Doc. 34-2 at 2).

and breaking the law. (R. Doc. 20 at 9-11).[3] While Plaintiff's name was not identified at the

Press Conference, Plaintiff alleges that he was clearly identified by his rank and position, recent

resignation, and other factors. (R. Doc. 20 at 11).

Plaintiff asserts that in addition to Landry, Alicia Wheeler ("Wheeler") and Angelique

Freel ("Freel"), who were both Assistant Attorneys General at the DOJ, are fact witnesses with

respect to "Mr. Landry's attempts to block the publication of [Plaintiff's] complaint and sexual

harassment allegations against Mr. Magee, including communicating with third parties about the

release of this information on April 6, 2021, and April 7, 2021, and the release of Ms. Schober's

April 7, 2021 document." (R. Doc. 24 at 3).

The record indicates that depositions have been conducted of Plaintiff, Schober, Magee,

Leon Cannizzaro, who served as the Director of the Criminal Division of the DOJ since April

2021, and Bill Stiles ("Stiles"), who served as Chief Deputy Attorney General at the times at

issue. Plaintiff asserts that these depositions have demonstrated that Landry has personal

knowledge regarding the claims and defenses in this action:

> On July 14, 2025, defense counsel took the deposition of Mr. Derbes. On July 15,
> 2025, and July 16, 2025, plaintiff's counsel took the depositions of Leon
> Cannizzaro, Sandra Schober, Wilbur Stiles, and Pat Magee. The deposition
> testimony confirmed Mr. Landry's firsthand knowledge about the claims and
> defenses in this case, including Mr. Landry's knowledge of Mr. Derbes' protected
> activity, Mr. Landry made the decision to take action against Mr. Derbes, and Mr.
> Landry personally organized the Press Conference and spoke the false statements
> about Mr. Derbes as more fully set forth in the Memorandum in Support adopted
> by reference as if fully quoted herein. Their testimonies demonstrated the need to
> depose Mr. Landry is warranted.

(R. Doc. 24 at 4).

Plaintiff appears to seek deposition testimony from Landry with respect to his statements

made at the April 21, 2021 Press Conference (which form the basis of the defamation claims),

---

[3] Plaintiff conventionally filed a video of the Press Conference into the record. (*See* R. Docs. 25, 26, 27).

the DOJ's declaratory judgment action with respect to the right and duties under the Louisiana Public Records Act with respect to Plaintiff's initial complaint ("Public Records Litigation"),[4] and Landry's involvement in the alleged retaliation/reprisal taken against him, including Plaintiff's complaints regarding the Campo Case and Insurance Fraud Funding. Plaintiff appears to seek deposition testimony from Freel and Wheeler based on their preparation of Landry for the Press Conference, their involvement with respect to the Public Records Act Litigation, and the preparation and release of Schober's April 7, 2021 memorandum.

Plaintiff represents that attempts to obtain dates for the depositions of Landry, Wheeler, and Freel were made on July 23, July 30, and August 5, but on October 8, 2025, defense counsel confirmed that these three individuals refused to appear for depositions. (R. Doc. 24 at 5). Plaintiff did not serve any Rule 45 subpoenas.

Plaintiff filed the instant Motion on October 10, 2025, arguing that the sought depositions of Landry, Wheeler, and Freel fall within the scope of discovery and that there is good cause for an extension of the October 15, 2025 non-expert discovery deadline for the purposes of taking these depositions.

On November 18, 2025, the undersigned held a conference with the parties, suspending the dispositive and Daubert motion deadlines and providing Plaintiff the opportunity to file a reply memorandum. (R. Doc. 39).

---

[4] The DOJ brought this declaratory judgment action against Andrea Gallo (a news reporter who sought the production of documents pursuant to the Louisiana Public Records Act) on or about February 8, 2021. *See Attorney General Jeff Landry, In his Official Capacity as the Custodian of Records for the Louisiana Department of Justice v. Andrea Gallo*, Civil Action No. C-704508 (19th Judicial District Court, East Baton Rouge, Louisiana). (*See* R. Doc. 34-13 at 101-107).

## II.    Law and Analysis

### A.    Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc*., 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)).

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). A court may not order compliance with a subpoena under Rule 45 unless the subpoenaed party and the parties to the action have first been provided notice of the motion to compel. *See*, *e.g.*, *Shaw Grp., Inc. v. Zurich Am. Ins. Co.*, No. 12-257, 2014 WL 68604, at *1 (M.D. La. Jan. 8, 2014), *reconsideration denied*, 2014 WL 204244 (M.D. La. Jan. 17, 2014); *see* Fed. R. Civ. P. 45(d)(2)(B)(i)("At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.").

Rule 30 of the Federal Rules of Civil Procedure governs depositions by oral examination. "A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1). "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). "[A] party seeking a protective order to prevent or postpone a deposition must show good cause and the specific need for protection." *Williams ex rel. Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002)(citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)).

Rule 16(b)(4) of the Federal Rules of Civil Procedure allows for the modification of a scheduling order deadline upon a showing of good cause and with the judge's consent. The Fifth Circuit has explained that a party is required "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Marathon Fin. Ins. Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting *S&W Enters., LLC v. Southtrust*

*Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). In determining whether the movant has established "good cause" for an extension of deadlines, the Court considers four factors: (1) the party's explanation for the requested extension; (2) the importance of the requested extension; (3) the potential prejudice in granting the extension; and (4) the availability of a continuance to cure such prejudice. *See Leza v. City of Laredo*, 496 Fed. App'x 375, 377 (5th Cir. 2012) (citing *Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

### B.    Analysis

#### 1.    The Named Defendant

As an initial matter, the original Petition (filed on November 5, 2021) named the defendant as follows: "State of Louisiana, through Louisiana Attorney General Jeff Landry, Department of Justice (hereinafter 'DOJ'), a State entity and elected official domiciled in East Baton Rouge Parish, Louisiana." (R. Doc. 1-4 at 1). On or about January 7, 2024, Landry assumed the office of Governor and Liz Murrill ("Murrill") succeeded him as Louisiana Attorney General. Accordingly, Murrill, in her official capacity as Louisiana Attorney General, was substituted in place of Landry by operation of law. *See* Fed. R. Civ. P. 25(d).[5] The current operative pleading reflects this substitution, naming the defendant as follows: "the State of Louisiana, through Louisiana Attorney General, Liz Murrill, and formerly Jeff Landry, Department of Justice (hereinafter 'DOJ'), a State entity and elected official domiciled in East Baton Rouge Parish, Louisiana." (R. Doc. 20 at 1).[6]

---

[5] "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution." Fed. R. Civ. P. 25(d).

[6] In this amended pleading, Plaintiff specifically asserts that he sought leave to substitute Murrill in place of Landry while the action was pending in State court, but that motion was not resolved prior to removal. (*See* R. Doc. 20 at 2).

In support of his Motion, Plaintiff refers to Landry as a "named defendant" given his former role as the Louisiana Attorney General. (*See* R. Doc. 24-2 at 13 15, 16). But Plaintiff did not sue Landry in his individual capacity. This is a lawsuit against the State of Louisiana, through the Office of the Louisiana Attorney General (*i.e.*, the DOJ). That Plaintiff named Landry as the Attorney General in the original pleadings does not mean that Landry remained a defendant, in any capacity, after he left that office. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citation omitted). Notably, after Defendant pointed out that Landry is not a named defendant in this action, Plaintiff remained silent on this issue in his Reply. (*See generally* R. Doc. 39).

Based on the plain language of the pleadings, Landry – as well as Freel and Wheeler – are all non-parties to this lawsuit. Defendant also represents that none of these individuals are currently employed by the DOJ. (R. Doc. 34 at 8). The Court will not compel the appearance of non-parties to a deposition absent a Rule 45 subpoena. *See Murray v. LeBlanc*, No. 21-592-JWD-RLB, 2024 WL 2741199, at *3 (M.D. La. May 28, 2024) (citing *Batiste v. Walmart Inc.*, No. 21-488-JWD-SDJ, 2023 WL 222222, at *3 (M.D. La. Jan. 17, 2023) ("Without a subpoena and without proof of notice to Hampton of this Motion to Compel, the Court will not compel his deposition."); *Holden v. Perkins*, No. 20-2143, 2021 WL 4268737, at *4 (E.D. La. Mar. 19, 2021) ("This Court has no power to require non-parties to attend a deposition without an enforceable subpoena first being issued."); *Campos v. Webb Cnty. Texas*, No. 12-7, 2013 WL 12387156, at *1 (S.D. Tex. Apr. 18, 2013) ("Mere notice of a deposition is insufficient to compel the attendance of any person not a party.").

Based on the foregoing, this Court will not order Landry, Wheeler, or Freel to appear for a deposition in the absence of a properly issued and served subpoena. The Court will, however, consider whether modification of the discovery deadline to secure any of these depositions is merited.

### 2.    The Discovery Deadline

This action was initiated on or about November 5, 2021 in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana. (R. Doc. 1-4 at 1-7). The action was removed by Defendant, which asserted that an exercise of federal question jurisdiction pursuant to 28 U.S.C. § 1331 was proper. (R. Doc. 1-4 at 10-19). The action was then remanded on the basis that an exercise of federal question jurisdiction was not proper. *See Derbes v. Louisiana*, No. 21-710-SDD-SDJ, 2022 WL 4838211 (M.D. La. Sept. 9, 2022), *report and recommendation adopted*, 2022 WL 4793052 (M.D. La. Sept. 30, 2022), *aff'd*, No. 22-30696, 2023 WL 4265757 (5th Cir. June 29, 2023). After Plaintiff amended the original petition to add federal discrimination claims, Defendant removed the action a second time on June 14, 2024. (R. Doc. 1).

It is in this context that the initial Scheduling Order, which set the deadline to complete non-expert discovery on June 16, 2025, was issued. (R. Doc. 13).

On April 4, 2025, Defendant filed a Consent Motion to Continue Trial given other legal obligations of defense counsel, noting that the parties anticipated motions practice with respect to the deposition of Landry. (R. Doc. 21). This motion did not seek an extension of time for the purposes of deposing Freel or Wheeler. The Court granted the motion, reset the non-expert discovery deadline to October 15, 2025 as requested, and set a new trial date of July 20, 2026. (R. Doc. 22).

On October 10, 2025, less than one week prior to the expiration of the non-expert discovery deadline, Plaintiff filed the instant Motion. (R. Doc. 24).

Plaintiff has not explained why these depositions were not sought earlier in the **four years** since this action was first initiated in State Court, notwithstanding the delays caused by Defendant's first removal of this action. Indeed, after the second removal, Plaintiff's own August 26, 2024 initial disclosures identified Landry, Freel, and Wheeler as likely to have discoverable information. (*See* R. Doc. 24-6 at 3-4). But when the Court extended the original deadline to complete discovery after the second removal, Plaintiff made no mention of his desire to depose Freel and Wheeler, despite their involvement in the Public Records Litigation and the Press Conference. Instead, Plaintiff waited until just one week prior to the close of the **extended** discovery deadline to seek an order compelling their depositions.

Given the record, the Court cannot conclude that Plaintiff was particularly diligent in seeking, much less securing by Rule 45 subpoenas, the instant depositions prior to the close of discovery. That said, the Court does recognize that Landry, Freel, and Wheeler have knowledge with respect to certain events in this litigation, and Defendant has been aware of Plaintiff's desire to depose these individuals since prior to the close of discovery. Accordingly, the Court will provide Plaintiff the opportunity to proceed with limited depositions to the extent allowed below. To minimize any prejudice to Defendant, the Court will also extend the dispositive motion deadline.

### 3. The Apex Deposition Doctrine – Landry

"There is no Fifth Circuit precedent which applies the apex deposition doctrine strictly prohibiting the deposition of high level executives. In fact, Federal Courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels

of the defendant are relevant in the case." *McGee v. Arkel Int'l, LLC*, No. 08-4704, 2013 WL 12228710, at *3 (E.D. La. Aug. 9, 2013) (citations omitted); *see Bachemin by & Through Bachemin v. DDMS, LLC*, No. 22-1976, 2023 WL 7280515, at *12 (E.D. La. Nov. 3, 2023) ("There is no Fifth Circuit law which applies the apex doctrine to strictly prohibit the deposition of high-level, or apex, executives."). "Instead, in the Fifth Circuit, courts typically permit an apex deposition so long as the party seeking that deposition has first taken a 30(b)(6) deposition or deposed other 'lower ranking employees with more direct knowledge of the relevant facts.'" *Lewis v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. 21-198-SM-RLB, 2023 WL 7251507, at *2 (M.D. La. Nov. 2, 2023) (quoting *Wilco Marsh Buggies & Draglines, Inc. v. Weeks Marine, Inc.*, 20-3135, 2022 WL 742443, at *4 (E.D. La. Mar. 11, 2022)); *see also Entergy Gulf States Louisiana, L.L.C. v. Louisiana Generating, L.L.*C., No. 14-385-SDD-RLB, 2021 WL 24686, at *8 (M.D. La. Jan. 4, 2021) (permitting "apex" witness deposition without first requiring a Rule 30(b)(6) deposition); *Texas v. Google LLC*, 347 F.R.D. 490, 497 (E.D. Tex. 2024) ("The prioritized completion of lower-ranking-employee depositions, or Rule 30(b)(6) corporate representative depositions, may either obviate any need for the 'apex' executive's deposition, or alternatively narrow the scope of the apex executive's deposition.").

The Fifth Circuit has recognized more stringent protections, however, with respect to the depositions of "apex" government officials or agents. "It is a settled rule in this circuit that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (internal punctuation and citation omitted) (issuing writ of mandamus and directing magistrate judge to quash notices of deposition issued to members of the Board of Directors of the Federal Deposit Insurance Corporation). "In determining whether exceptional circumstances exist, a court must consider (1) 'the high-ranking

status of the deponents,' (2) 'the potential burden that the depositions would impose upon them,' and (3) 'the substantive reasons for taking the depositions.'" *In re Bryant*, 745 F. App'x 215, 220 (5th Cir. 2018), *as revised* (Nov. 30, 2018) (quoting *In re FDIC*, 58 F.3d at 1060). The rationale for the "exceptional circumstances" requirement is that "[h]igh ranking government officials have greater duties and time constraints than other witnesses" and "[t]he fact that a high-ranking official talks to his constituents does not *ipso facto* mean he also has ample free time for depositions." *In re Paxton*, 60 F.4th 252, 259 (5th Cir. 2023) (issuing writ of mandamus directing district judge to quash notices of deposition issued to Texas Attorney General Ken Paxton).

"Once the court has determined the government official qualifies as 'high-ranking,' the burden shifts to the party seeking to depose the high-ranking official to demonstrate extraordinary circumstances." *Freedom From Religion Found., Inc. ("FFRF") v. Abbott,* No. 16-233, 2017 WL 4582804, at *11 (W.D. Tex. Oct. 13, 2017). "Courts will generally only consider subjecting a high ranking government official to a deposition if the official has first-hand knowledge related to the claims being litigated and other persons cannot provide the necessary information." *Id*.

There is no dispute that Landry qualifies for consideration of the apex deposition doctrine in light of his high-ranking status as a government official, although the parties appear to dispute whether Landry's former position (Louisiana Attorney General) or current position (Governor of Louisiana) is relevant to the analysis.

The Court finds both positions to be applicable to different factors. Landry's former position as Louisiana Attorney General is the relevant position for determining whether he has any unique firsthand knowledge that would merit a finding of exceptional circumstances. *See In*

*re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 11 -2244, 2015 WL 14097187, at *4 (N.D. Tex. Dec. 14, 2015) (the prospective "apex" deponent's position is measured by the role in which the individual "obtained unique, direct, and firsthand knowledge" as opposed to an "inconsequential" subsequent position). That said, Landry's current position as Governor of Louisiana is the relevant position for determining whether and to what extent a deposition would result in potential undue burden. Given that Defendant has met its burden of establishing that Landry qualifies as a "high-ranking" official, the burden shifts to Plaintiff to establish that there are extraordinary circumstances to require his deposition in this civil action.

While depositions of governors are rare, "courts have allowed the depositions of both current and former governors." *Maney v. Oregon*, No. 20-00570, 2023 WL 3866761, at *4 (D. Or. June 7, 2023) (citing cases); *see FFRF*, 2017 WL 4582804, at *11 (allowing deposition of Texas Governor Gregg Abbot, who was a party to the lawsuit in his individual capacity); *but see Babin v. Breaux,* No. 10-368-BAJ-DLD, 2012 WL 83672 (M.D. La. Jan. 11, 2012) (quashing Rule 45 subpoena directed at former Louisiana Governor Bobby Jindal, where the court found a lack of support for Plaintiff's argument that the governor had personal involvement or knowledge of layoff decisions by the Department of Culture, Recreation, and Tourism).

The Court has reviewed the arguments set forth by the parties, including the referenced deposition testimony, and finds that Plaintiff has not established exceptional circumstances to require Landry to appear for a deposition in this case.

Plaintiff alleges that "[D]efendant sued a member of the media in an effort to protect Magee and shield various public records in violation of Louisiana's Public Records Act, La. R.S. 44:1, *et seq.*, including Petitioner's written complaint of sexual harassment, from view." (R. Doc. 20 at 5). At the Press Conference, Freel explained that she was the attorney who recommended

that this declaratory judgment action be filed on behalf of the DOJ. The record shows that the declaratory judgment action sought the declaration of the rights and duties of the DOJ with respect to the release of Plaintiff's initial complaint against Magee. Plaintiff has not demonstrated any basis for requiring Landry to appear at a deposition with respect to the legal decision to file that declaratory judgment action on behalf of the DOJ or with respect to any particular legal decisions regarding that lawsuit. Even if Landry was not protected by the apex deposition doctrine, such questioning would intrude on information protected by the attorney-client privileged and/or the work product doctrine.

In his April 19, 2021 resignation letter, Plaintiff appears to assert that his complaints regarding the Campo Case and Insurance Fraud Funding form a basis for his retaliation/reprisal claims:

> I also reported, opposed, and complained about several practices occurring in the workplace. These include issues with illegal spending of insurance fraud support unit statutorily dedicated funds and the preferential treatment afforded a politically connected individual facing twenty counts of child pornography charges involving juveniles under the age of thirteen years old.

(R. Doc. 34-2 at 1). Plaintiff has had the opportunity to obtain discovery to establish the extent to which information was known to the DOJ and its employees at all points relevant to this litigation. Plaintiff has not set forth any documentary evidence or testimony establishing that he raised these complaints to Landry prior to the submission of his resignation letter. The resignation letter itself does not specify when or how these reports or complaints were made prior to Plaintiff's resignation.

The record shows that Schober testified that she was unaware of the Insurance Fraud Funding claim prior to the resignation letter. (R. Doc. 34-4 at 9). With respect to the Campo Case, Plaintiff testified that he discussed these concerns with Magee and two individuals who

were not deposed – Steve Martin and Marty White. (R. Doc. 34-1 at 46). Plaintiff specifically testified he did not bring the Campo Case to the attention of Schober or Stiles, and had no recollection of reporting it to Vicki Crochet, a partner at the outside firm investigation the employment-related complaints about Magee. (R. Doc. 34-1 at 41-42, 47-48).

That said, Plaintiff has alleged that <u>after</u> receipt of the resignation letter, he was subject to immediate reprisal/retaliation, including the denial of medical leave and termination of his employment and benefits effective on the date of the registration letter. But Plaintiff has provided no other deposition testimony indicating that Landry was personally involved in any decision-making process with respect to the termination of Plaintiff's employment benefits after the receipt of the resignation letter. Plaintiff suggests that Landry should have to appear at a deposition simply because he "knew about [Plaintiff's] complaints buttressing the need for his deposition regarding these topics." (*See* R. Doc. 39 at 5). But this logic would require a Louisiana Attorney General to appear at a deposition on any listed prior complaint included in a DOJ employee's resignation letter regardless of any evidence of personal knowledge of the prior complaints. Furthermore, while Landry may be able to provide relevant testimony regarding the DOJ's decisions regarding Plaintiff's employment and benefits after receipt of the resignation letter, Plaintiff has had the opportunity to seek discovery from other sources.

Plaintiff also alleges that he was defamed by Defendant through the specific language used by Landry at the Press Conference. Again, Landry has not been named as an individual defendant in this action. Plaintiff asserts that Landry called this Press Conference in retaliation and as a direct result of receiving Plaintiff's constructive discharge letter of resignation and commenced to make several defamatory statements at the conference. (R. Doc. 20 at 9-11).

Schober testified, however, that the Press Conference was already scheduled prior to receipt of Plaintiff's resignation letter. (R. Doc. 34-4 at 5).

Defendant argues that Landry's testimony regarding the Press Conference is not required because Plaintiff has had the opportunity to depose the appropriate chain-of-command (which ran through Magee, Stiles, and then to Landry), the deposition testimony already taken establishes what was known and what was conveyed, Landry was briefed on information provided at the Press Conference from other employees, and the statements at the Press Conference speak for themselves. (R. Doc. 34 at 14-16, 23). In reply, Plaintiff argues that Landry has "firsthand knowledge regarding his own statements during the Press Conference" and his "knowledge regarding the truth and falsity of the statements made during the Press Conference is relevant for purposes of establishing the elements of falsity and fault." (R. Doc. 39 at 4). Plaintiff suggests that if he is deemed to be a public figure or official, he must establish actual malice by showing Landry knew of the falsity of his statements at the time of the Press Conference. (R. Doc. 24-2 at 10).

As stated above, Plaintiff has not filed any claims against Landry in his individual capacity. Instead, Plaintiff has filed an action against the State of Louisiana, through the DOJ. Landry's statements made during the Press Conference were recorded, are undisputed, and are part of the record. (*See* R. Docs. 25, 26, 27). There is no dispute regarding what Landry said at the Press Conference. Those statements speak for themselves.

Furthermore, Plaintiff has had the opportunity to depose individuals (including Schober) with respect to the DOJ's knowledge of truth or falsity with respect to statements made at the Press Conference. The record also shows that Stiles testified that he had the role of advising Landry with respect to the investigation and suspension of Magee, as well as the investigation

16

into Plaintiff with respect to his social media postings. (R. Doc. 34-10 at 4-8). Plaintiff has not

set forth evidence that Landry had any specific firsthand knowledge regarding Magee's alleged

behavior, or Plaintiff's reporting of that behavior, that would establish exceptional circumstances

for his deposition to move forward. Additionally, as discussed below, the Court will provide

Plaintiff with the opportunity to depose Freel and Wheeler, both attendees at the Press

Conference .

Having considered the arguments of the parties, the Court concludes that Plaintiff has not

set forth any substantive reasons or need for Landry's deposition given his former position as

Louisiana Attorney General and attendance at the Press Conference. "It is entirely unexceptional

for a public official to comment publicly about a matter of public concern. If doing so imparts

unique knowledge, high-level officials will routinely have to testify." *Paxton*, 60 F.4th at 258.

The other issues raised by Plaintiff – including the Public Records Litigation, the Campo Case,

and the Insurance Fraud Funding – all involve issues for which substantive information can be

obtained from other sources to the extent it is not protected by the attorney-client privilege

and/or the work product doctrine.

And even if there was a substantive reason for Landry's deposition, allowing such a

deposition to proceed under the circumstances of this case would impose an undue burden on the

Governor of Louisiana, who has "greater duties and time constraints than other witnesses." *Id*.

(quoting *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993)). Plaintiff could have sought

and secured Landry's deposition while he was still Louisiana Attorney General. The Court finds

no exceptional circumstances meriting an order requiring Landry to appear for an involuntary deposition at this point in this litigation.[7]

### 4.      Freel and Wheeler

Having considered the record, the Court will provide Plaintiff the opportunity to take limited depositions of Freel and Wheeler, which may be secured by subpoena if these non-party individuals will not voluntarily appear through coordination with defense counsel. While Plaintiff should have been more diligent in securing these depositions, the Court finds good cause to allow limited depositions of these individuals to move forward, particularly given the preclusion of Landry's deposition as described above. This will provide Plaintiff the opportunity to obtain additional first-hand knowledge with respect to what was known to Defendant at the time of the Press Conference, as well as additional information regarding employment decisions made with respect to Plaintiff's employment.

In opposing these depositions, Defendant points to Freel's and Wheeler's role as counsel in the Public Records Litigation, focusing on the three-prong test set forth in *Shelton v. American Motors Corporation*, 805 F.2d 1323, 1327 (8th Cir. 1986). This test, which has been adopted by district courts in the Fifth Circuit, is used "to determine circumstances when in-house counsel or other opposing counsel should be subject to depositions." *Cobbins v. Graham*, No. 21-155-JWD-

---

[7] Defendant also briefly argues that Freel qualifies for consideration of the apex deposition doctrine based on her current role as Executive Counsel to Governor Landry. (*See* R. Doc. 34 at 21-22). The Executive Counsel is appointed by the Governor to serve at his pleasure. *See* La. R.S. 49:203 ("The executive counsel shall be appointed by the governor, and shall take the oath and be commissioned in the manner provided by law, and shall hold office at the pleasure of the governor appointing him, but not beyond the term of the governor; provided he shall hold office until his successor is appointed and qualified."). Defendant does not, however, direct the Court to any prior decision concluding that this legal position constitutes sufficient high-ranking status for the purposes of the apex deposition doctrine. More importantly, it is Freel's former position as Assistant Attorney General that is relevant for determining whether she has any unique firsthand knowledge that would merit a finding of exceptional circumstances to allow the deposition to proceed. There is no dispute that this former position does not qualify for the apex deposition doctrine. To the extent the apex deposition doctrine is applicable given Freel's current position, the Court has considered the potential burden placed on Freel and has limited the temporal and substantive scope of the deposition, which will minimize any burden.

EWD, 2025 WL 819300, at *6 (M.D. La. Mar. 13, 2025); *see Nguyen v. Excel Corp.*, 197 F.3d

200 (5th Cir. 1999) (affirming the use of the *Shelton* factors without expressly adopting them).

"Under *Shelton*, in order to depose opposing counsel, the party seeking to take the deposition

must show that (1) no other means exist to obtain the information than to depose opposing

counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is

crucial to the preparation of the case." *Cobbins*, 2025 WL 819300, at *6 (citing *Shelton*, 805

F.2d at 1327).

     While Freel and Wheeler do not serve as opposing counsel in this litigation, the Court

finds the *Shelton* factors to be instructive (with respect to any testimony sought regarding the

Public Records Litigation) because allowing these depositions to proceed would implicate some

of the same concerns disfavoring the depositions of opposing party's counsel, including

requiring attorneys to testify against their own clients. Here, Defendant represents that Freel and

Wheeler served as counsel of record for the DOJ (*i.e.*, the Defendant) in the Public Records

Litigation. (*See* R. Doc. 24-2 at 3; *see* R. Doc. 24-13). But even without consideration of all of

the *Shelton* factors, discovery with respect to those attorneys' involvement in the litigation,

including decisions regarding the production of documents, would be protected by the attorney-

client privilege and/or work product immunity.

     Plaintiff appears to seek these depositions, in part, to obtain facts with respect to how the

press obtained a copy of Schober's April 7, 2021 memorandum that revealed Plaintiff's identity

as the individual raising complaints of sexual harassment by Magee. Plaintiff has had the

opportunity to depose Schober, who testified with respect to the public release of document. (R.

Doc. 34-4 at 6-7). The record shows that the memorandum was produced by Wheeler, without

full redactions, in the context of discovery in the Public Records Litigation:

Discovery has revealed that in terms of the acquisition of the April 7, 2021 memo by Andrea Gallo (a news reporter), the DOJ's document production establishes that the April 7, 2021 memo was produced by Alicia Wheeler to Andrea Gallo's attorney (Scott Sternberg) as part of the ongoing document production in the Gallo suit/declaratory judgment action instituted by the DOJ to protect the identities of those interviewed during the investigation of Pat Magee's workplace behavior, which stemmed from Plaintiff's complaint. . . . More specifically, the records show that: (1) Alicia Wheeler emailed a redacted copy of the April 7, 2021 memo to Scott Sternberg on April 7, 2021 at 5:28 p.m., (2) Scott Sternberg emailed Alicia Wheeler on April 7, 2021 at 5:54 p.m. to ask whether he could send the document to Andrea Gallo, (3) Alicia Wheeler emailed Scott Sternberg on April 8, 2021 at 9:12 a.m. to ask him not to send the document to Andrea Gallo because she had forgotten to redact a job title contained within the memo, (4) Andrea Gallo emailed Plaintiff on April 8, 2021 at 9:24 a.m. seeking to question him about the April 7, 2021 memo, (5) Andrea Gallo updated a news story (mentioning therein the April 7, 2021 memo) on April 8, 2021 at 9:51 a.m., and (6) Alicia Wheeler emailed Scott Sternberg a new (and fully) redacted copy of the April 7, 2021 memo on April 8, 2021 at 9:53 a.m.

(R. Doc. 34 at 27-28) (citing R. Doc. 34-13 at 164-177). While Plaintiff may not seek testimony from Freel or Wheeler with respect to attorney-client privileged information or protected work product, it would be appropriate for Plaintiff to question these individuals with respect to facts regarding the release of the April 7, 2021 memorandum.

The Court also agrees with Plaintiff that Freel and Wheeler were not acting as in-house counsel with respect to any input with respect to the preparation of the April 7, 2021 memorandum, preparatory meetings for the Press Conference (to the extent the meeting did not concern privileged discussions regarding the Public Records Litigation), or any other decisions regarding Plaintiff's employment. The Court will allow Plaintiff to proceed with questioning on these topics. Plaintiff's counsel shall refrain from questioning on topics expressly related to the Public Records Litigation.

Plaintiff has agreed to limit the depositions of Freel and Wheeler by allowing them to occur on a weekend, if necessary to avoid burden, and by providing a "five (5) – ten (10) minute break every hour, and a two (2) hour time limitation for each witness." (R. Doc. 39 at 3). The

Court finds these limitations to be appropriate, given the limited subject matter to be explored at the depositions, the late request for these depositions to occur, and Freel's current position as Executive Counsel to Governor Landry.

**III.    Conclusion**

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Compel Depositions and Extend Discovery Deadline for Limited Purpose (R. Doc. 24) is **GRANTED IN PART and DENIED IN PART**. The parties shall bear their own costs.

**IT IS FURTHER ORDERED** that the deadline to complete non-expert discovery is extended to **February 13, 2026** for sole purpose of providing Plaintiff the opportunity to secure the depositions of Alicia Wheeler and Angelique Freel, as limited above, by Rule 45 subpoena if those individuals refuse to voluntarily attend a deposition coordinated with defense counsel.

**IT IS FURTHER ORDERED** that the deadline to file dispositive and Daubert motions is extended to **February 20, 2026.**

Signed in Baton Rouge, Louisiana, on January 14, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**